DISTRICT COURT JUDGE SIMONTON, sitting in for JUSTICE NELSON,
concurs.
¶41 I concur in the Court’s Opinion. Furthermore, I would like to respond to the dissents because I think their positions change what I understand has been traditionally, and should be, the law in Montana regarding oil and gas development.
¶42 If our goal is the encouragement of oil and gas production rather *235 than speculation, allowing the retention of leases without working them is contrary to that goal. In this case, there has been no production from some wells for three years. In some cases electric meters have been disconnected for two years. When production ceases so there is not even a question of whether there is production in paying quantities, the secondary term of the lease terminates as production is a condition precedent to the continuation of the lease. Since lack of production terminates the secondary term, the only issue should then be whether the lack of production is excusable. The temporary cessation of production doctrine was developed to provide that excuse.
¶43 The dissents would include, as elements of that doctrine, variables such as oil prices, the oil market, and production costs of the operator. Equity, or a justifiable excuse to stop production, should not be dependent upon the efficiency of the operator. If C-W were having financial problems, and if production was not profitable for it, it should have welcomed the opportunity to walk away from the lease and give another operator the chance to produce at a profit for itself and the mineral owner. How equitable is it to the mineral owner who is at the mercy of the operator or producer to decide unilaterally what is profitable and whether to continue production?
¶44 The leases are prepared and printed by the producer. Often times the mineral owner will make changes in the language of the printed form or attach an addendum that will be part of the lease. If the producer wants factors such as market price, cost of production, and market availability to be factors in the secondary term of the lease, it can include that language as a part of the lease and make it contractual.
¶45 I agree that any doctrine of temporary cessation of production that precludes forfeiture of the secondary term of the lease should be limited to acts of God and mechanical problems, coupled with a diligent effort by the producer to remedy them.
¶46 The position of the majority results in the development of minerals for the benefit of both the lessor and the lessee and ultimately for the benefit of the consumer. The test for a temporary shut-down is fairly clear and consistent with development.